**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CATHERINE BECKWITH,** | : | **Civil No. 4:12-CV-108** |
| | : | |
| **Plaintiff** | : | **(Judge Brann)** |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **THE PENNSYLVANIA STATE** | : | |
| **UNIVERSITY d/b/a** | : | |
| **PENNSYLVANIA STATE** | : | |
| **UNIVERSITY, COLLEGE OF** | : | |
| **MEDICINE,** | : | |
| | : | |
| **Defendant** | : | |

## REPORT AND RECOMMENDATION

## I.    INTRODUCTION

In this action, Catherine Beckwith (" Beckwith" or the "plaintiff") has sued her former employer, the Pennsylvania State University, d/b/a Pennsylvania State University, College of Medicine ("Penn State"), alleging that Penn State breached a six-year employment contract and violated her right to procedural and substantive due process when it terminated her employment after two years.  The parties have completed discovery and engaged in a series of unsuccessful efforts to mediate a settlement of this dispute.  Penn State has now moved for summary judgment on Beckwith's claims.  The motion is ripe for disposition and, for the reasons that follow,

it is recommended that the motion be granted and judgment entered in Penn State's favor.

## II.   <u>BACKGROUND</u>

On February 27, 2007, Penn State offered Beckwith a tenure-track faculty position as an Associate Professor in the Department of Comparative Medicine at an annual salary of $110,000.  (Doc. 29, Def. Statement of Material Facts ("Def. SMF") ¶ 4 and Ex. A, Offer Letter.)  At the time of her appointment, Beckwith was to be hired with zero years being credited towards tenure.  (<u>Id.</u>)

Prior to Beckwith's recruitment, the Department of Comparative Medicine did not have a research focus, and Beckwith's appointment was intended to change that. (Doc. 32, Pl. Counterstatement of Material Facts ("Pl. SMF") ¶¶ 52-53.)  The offer letter provided that Beckwith's initial allocation of effort in her job would be 75% research, with the remaining 25% to be divided between teaching and professional administrative activities.  (Def. SMF ¶ 5 and Ex. A.)  Beckwith accepted Penn State's offer on March 9, 2007.  (<u>Id.</u> ¶ 6.)

The offer letter that Penn State provided to Dr. Beckwith stated that "[tenure] is a six-year process, but consideration for earlier tenure is possible based on your performance."  (Def. SMF, Ex. A.)  The letter provided that Dr. Beckwith "[would] receive 2nd and 4th year reviews."  (<u>Id.</u>)  At the same time, the letter expressly

2

incorporated into its terms the policies of the Pennsylvania State University and the College of Medicine regarding faculty appointments.  (Id.)  These policies provide, *inter alia*, for non-reappointment of non-tenured faculty during the provisional period before a professor has been awarded tenure.

The terms of Beckwith's offer were the subject of extensive negotiation between Beckwith and Dr. Ronald Wilson, the Department Chair, including communication via email and multiple telephone conversations. (Pl. SMF ¶¶ 58-59.) At the time she accepted the offer, Beckwith understood that academic publication was paramount to her success with Penn State.  (Def. SMF ¶ 7.)

To aid in her research initiatives, which were a central consideration in her appointment, the offer letter further provided that Beckwith was to be furnished with $225,000 for equipment purchases.  Beckwith and Wilson also negotiated for the University to provide salary support for a research support assistant for three years, with the understanding that at the conclusion of three years support for the research assistant would be transferred to Beckwith's anticipated extramural funding.  (Pl. SMF ¶¶ 75-77; Def. Response, ¶ 75.)  Wilson and Beckwith also negotiated graduate student support for a period of five years, which could have ranged between $20,000 to $40,000 per year.  (Pl. SMF ¶ 78; Def. Response ¶ 79.)  Beckwith also negotiated with Wilson to have the University provide a more senior research technician, which

Wilson described as atypical for an incoming faculty member.  (Pl. SMF ¶ 80.) Beckwith and Wilson also negotiated the size of Beckwith's laboratory space, and the renovations that would be necessary to accommodate Beckwith's research program. (Id. ¶ 82.)  Additionally, Beckwith and Wilson negotiated Beckwith's starting salary of $110,000, and the payment of Beckwith's relocation expenses from California, even going so far as to secure an exemption of the cap that Penn State places on the payment for such expenses.  (Id. ¶ 84.)

Beckwith began her employment with Penn State on May 1, 2007.  In June, 2007, Beckwith submitted her personal goals and objectives to Dr. Wilson.  Among the goals that Beckwith identified was that she would publish during the 2007-2008 academic term.  It is undisputed that Beckwith did not meet this goal, and did not publish during this period.

On May 28, 2008, Wilson conducted Beckwith's annual performance evaluation in accordance with Penn State policy HR40.  In the evaluation, Wilson noted that Beckwith's work "met" expectations, but he also underscored that it was important for her to show progress in research during the upcoming term as she approached her second-year promotion and tenure review.  As it turns out, Beckwith showed insufficient progress in this area in the months that followed her initial

review, and caused University officials to recommend that she not be continued on a tenure-track program with the College of Medicine.

Beckwith's second-year tenure review was governed by University Policy HR 23 Promotion and Tenure Procedures and Regulations ("HR23"). On November 20, 2008, Dr. Wilson requested that Beckwith submit the required sections of her promotion and tenure dossier for her second-year review by December 31, 2008, which Beckwith did. (Def. SMF ¶¶ 13-15.) On or about February 1, 2009, Beckwith reviewed her dossier for accuracy and comprehensiveness of information. As part of that review, Beckwith requested that Wilson address a few items in her dossier that she believed "needed attention." (Id. ¶¶ 16-17.) Accordingly, Wilson revised certain items in the dossier that Beckwith had identified. (Id. ¶ 18.) Plaintiff signed her completed dossier on February 2, 2009, and wrote "I do not agree with the Chair's narrative." (Id. ¶ 20.)

On February 6, 2009, the Department Promotion and Tenure Committee recommended that Beckwith continue on tenure track. (Id. ¶ 22.) On February 13, 2009, Wilson wrote a letter of evaluation and second-year review for Beckwith. (Id. ¶ 23.) In his letter, Wilson cited Beckwith's failure to publish and meet expectations with respect to research, and recommended that Beckwith not continue on tenure track. (Id. ¶ 24.) Additionally, during his March 16, 2009 review, Dr. Harold Paz,

5

the Dean of the College of Medicine, stated that Beckwith's progress in the area of research and creative accomplishments was not satisfactory, and recommended that the College Promotion and Tenure Committee convene to make a recommendation as to whether Beckwith should continue on tenure track. (Id. ¶ 26.)

On April 7, 2009, the College of Medicine Promotion and Tenure Committee reviewed Beckwith's second-year dossier and recommended that she not continue on tenure track because of a lack of demonstrated productivity and publication. (Id. ¶¶ 27-28.) On April 24, 2009, Dr. Paz informed Beckwith that her provisional employment would not be continued, and that her employment with Penn State would terminate on June 30, 2009. (Id. ¶ 29.)

On May 30, 2009, Beckwith filed a Petition for Review of a Complaint with the University Faculty Senate Committee on Faculty Rights and Responsibilities (the "Faculty Senate Committee"), lodging objections relating to professional ethics and procedural fairness that she claimed adversely affected her second-year review. (Id. ¶ 30.) After reviewing the petition, the Faculty Senate Committee did not find any violation of professional ethics. (Id. ¶ 31.) However, the Faculty Senate Committee did find evidence of procedural unfairness, which it concluded had a consequential impact on the outcome of Beckwith's review. (Id. ¶ 32.) In the final version of its findings, which were issued in November, 2009, the Faculty Senate Committee

recommended that the "section of the dossier specifically set aside for the description of unit specific expectations for promotion and tenure be revised to include statements of the specific expectations within the allocated effort for research consistent with those expectations communicated to [Beckwith] through her letter of offer and the HR40 review letter. This revised dossier should then be reconsidered at all levels of review." (Id. ¶ 33.)[1]

---

[1] The plaintiff exerts considerable effort in denying this fact in part, (Pl. SMF ¶ 33), or challenging the manner in which the Faculty Senate Committee reached its ultimate conclusion, (id. ¶¶ 149-234), but does not so much dispute the fact of this language as she claims that the document produced by the Faculty Senate Committee was not an "original version," and she argues that "the meaning of the quoted language creates a genuine issue for trial." (Id.) We do not find that the fact of the Faculty Senate Committee's recommendation is actually a matter of genuine dispute that has a material bearing on the outcome of the defendant's motion. It is clear from the record that the Faculty Senate Committee's initial set of recommendations, issued in a September 14, 2009 draft which called for the plaintiff's offer letter and a copy of HR40 to be included as part of her dossier, was subsequently revised upon request by the Blannie Bowen, the University Vice Provost for Academic Affairs, who believed that inclusion of these documents was either improper or unnecessary based upon his 26 years of experience at Penn State. However, the Faculty Senate Committee's final decision, which issued on November 6, 2009, included a single recommendation that incorporated the *substance* of the initial concern: "the committee recommends that the section of the dossier specifically set aside for the description of unit specific expectations for promotion and tenure be revised to include statements of the specific expectations within the allocated effort for research consistent with those expectations communicated to [Beckwith] through her letter of offer and the HR-40 review letter." (Doc. 32, Ex. X, at D01474.)

Beckwith's dossier was revised in accordance with the Faculty Senate Committee's decision, and was completed on December 11, 2009. (Id. ¶ 35.) The plaintiff signed the completed revised dossier on December 11, 2009, and expressly noted that "I challenge the inaccurate content about expectations, reviews and % of effort . . . ." (Id. ¶ 37, Ex. M, at Bates No. D01258-59.) On December 18, 2009, the Department Promotion and Tenure Committee re-reviewed Beckwith's dossier, and did not change its opinion that Beckwith should remain on tenure-track. (Def. SMF ¶¶ 38-39.)

In contrast, on December 22, 2009, Dr. Wilson wrote a letter of evaluation in connection with his re-review of Beckwith's dossier, and again recommended that she not continue on tenure-track. (Id. ¶¶ 40-41.) On January 11, 2010, the College Promotion and Tenure Committee also re-reviewed Beckwith's revised dossier, and joined Dr. Wilson in recommending that Beckwith not continue on tenure-track. (Id. ¶¶ 42-43.) On January 20, 2010, Dr. Paz wrote to the plaintiff to inform her that the review of her dossier had concluded, and "the original decision that [her] provisional employment [would] not be continued" stood. (Id. ¶ 44, Ex. N, Bates No. D00581.) Dr. Paz also advised the plaintiff that her employment would terminate as of June 30, 2011. (Id.)

In response, Beckwith filed two more petitions with the Faculty Senate Committee.  In the first, filed April 28, 2011, Beckwith alleged a violation of professional ethics by Dr. Wilson, charging that he "entered false and deceitful information into [her] dossier for [her] second-year tenure review which resulted in termination of [her] tenure track faculty appointment."  (Def. SMF, Ex. B.)  On May 19, 2011, the Faculty Senate Committee advised Beckwith that it had "found no evidence of violations of professional ethics and no reason to believe that further investigation would reveal otherwise."  (Id., Ex. O, Bates No. D00221.)

On June 3, 2011, Beckwith filed a third petition with the Faculty Senate Committee alleging that she had "new documents . . . previously unseen by the [Faculty Senate] Committee, which demonstrate that false statements of fact were knowingly entered into the dossier" and that this "unfairly resulted in termination of [her] tenure track appointment."  (Id., Ex. B and Ex. P, June, 2011 Petition for Review of a Complaint, Bates Nos. D00161-D00164.)  On June 7, 2011, the Faculty Senate Committee responded by informing Beckwith that it would not review her third petition because it "makes the same claims" that were made in the previous petition of April 28, 2011.  (Id., Ex. Q, Bates No. D00157.)

Plaintiff's employment with Penn State ended on June 30, 2011.  (Def. SMF, Ex. N.)  In April, 2013, the plaintiff obtained employment as a civilian employee for

the Department of Defense, and at the time the motions were filed earned an annual salary of $115,000.  (Def. SMF ¶ 51.)

Beckwith initiated this action by filing a complaint on January 19, 2012. (Doc. 1.)  Penn State answered the complaint on April 17, 2012.  (Doc. 5.)  In May, 2012, the action was referred to mediation, and the parties participated in settlement conferences overseen, respectively, by a third-party mediator and the Honorable William I. Arbuckle, III, of this Court, but these efforts ultimately proved unsuccessful.  Thereafter, on December 30, 2013, the defendants filed the instant motion for summary judgment.  (Doc. 28.)  The motion is fully briefed and ripe for disposition.

## III.   <u>STANDARD OF REVIEW</u>

Pursuant to Rule 56(a), summary judgment is proper where there is no genuine issue of material fact. Fed. R. Civ. P. 56(a).  In viewing the evidence in the light favorable to the non-moving party, summary judgment will be granted against a party who does not make a sufficient showing to establish "an element essential to that party's case."  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322–23 (1986).

The moving party carries the initial burden to inform the Court of the basis for its summary judgment motion; to produce evidence to establish a prima facie case as to each element; and to identify the absence of no genuine issue of material fact.  *Id.*

When the non-moving party cannot establish an essential element and there is "no genuine issue as to any material fact," the moving party is entitled to summary judgment as a matter of law. Id. at 322.

Material facts are those that "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Mere factual disputes will not preclude summary judgment when they are irrelevant to the outcome of the suit. Id. An issue is "genuine" if a reasonable trier of fact could return a favorable verdict for the non-moving party. Mengel v. Reading Eagle Co., CIV.A. 11–6151, 2013 WL 1285477 (E.D.Pa. Mar.29, 2013), appeal dismissed (Oct. 30, 2013) (citing Anderson, 477 U.S. at 248).

To defeat summary judgment, the non-moving party must go beyond the pleadings and present "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(c). Moreover, the non-moving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions to survive a summary judgment motion. Williams v. Borough of W. Chester, 891 F.2d 458, 460 (3d Cir.1989) (citing Celotex, 477 U.S. at 325). Where the non-moving party will have the burden of proof at trial, the moving party can make a showing that there is an "absence of evidence to support the non-moving party's case." Jones v. Indiana Area Sch. Dist., 397 F.

Supp. 2d 628, 642 (W.D.Pa.2005) (quoting <u>Celotex</u>, 477 U.S. at 325).

## IV.   <u>DISCUSSION</u>

The plaintiff advances three separate claims in this case.  First, Beckwith claims that Penn State violated her right to procedural due process that she claims she was owed before the University could lawfully terminate her employment.  (Compl., Count I.)  Second, Beckwith asserts a substantive due process claim, arguing that Penn State deprived her of a liberty interest in her reputation in that she "now has a substandard employment record that severely diminishes her reputation and standing in the academic community, and significantly impairs her ability to find comparable employment in another university."  (<u>Id.</u>, Count II.)  Finally, Beckwith claims that Penn State breached a six-year employment contract that she claims was formed by the offer letter and Penn State Policy HR23 relating to promotion and tenure when the University terminated her employment after two years.  We address the claims, and Penn State's arguments in favor of summary judgment, in turn.

### A.    **Plaintiff's Procedural Due Process Claim Fails**

The Supreme Court has instructed that "The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits."  <u>Bd. of Regents of State Colleges v. Roth</u>, 408 U.S. 564, 576 (1972).  In order to have a property interest in a benefit,

"a person clearly must have more than an abstract need or desire for it.  He must have more than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it." Id. at 577.  Property interests are not created by the Constitution, but rather are created and defined by independent sources such as state law.  Id. Thus, "[w]hether a person has a legitimate entitlement to – and hence a property interest – in his government job is a question answered by state law." Hill v. Borough of Kutztown, 455 F.3d 225, 234 (3d Cir. 2006); see also Baraka v. McGreevey, 481 F.3d 187, 205 (3d Cir. 2007).  The fundamental issue in this case, therefore, is whether as a non-tenured faculty member at Penn State, Beckwith had a legitimate claim to entitlement of her professorship at Penn State.

It has long been recognized that teachers and college professors who are dismissed from their positions held under tenure provisions have interests in their continued employment that are safeguarded by due process.  Id.  (citing Slochower v. Bd. of Educ., 350 U.S. 551 (1956)).  Likewise, "professors and staff members dismissed during the terms of their contracts" are similarly entitled to due process protections.  Id.  (citing Wieman v. Updegraff, 344 U.S. 183 (1952)).  Beckwith was not tenured and, thus, whether she was entitled to due process protections in her continued employment turns on whether she had a legitimate claim of entitlement to her job that was conferred by an independent source such as state law or a contract.

See Goodmann v. Hasbrouck Heights Sch. Dist., 275 F. App'x 105, 107-08 (3d Cir. 2008).

In Pennsylvania, a public employee is generally considered to be an at-will employee, and, therefore, to have no legitimate entitlement to continued employment, unless the employee has a contractual or statutory term providing otherwise. See Elmore v. Cleary, 399 F.3d 279, 282 (3d Cir. 2005); Pipkin v. Pa. State Police, 693 A.2d 190, 191-92 (Pa. 1997). Notably, "a legitimate entitlement to continued employment cannot be premised on employee policies or disciplinary procedures alone." Lord v. Erie County, 476 F. App'x 962, 966 (3d Cir. 2012) (citing Elmore, 399 F.3d at 282-83); see also Miller v. Clinton Cnty., 544 F.3d 542, 552-53 (3d Cir. 2008) (rejecting "argument that personnel policy handbook conferred employment that could only be terminated for just-cause"). Instead, "terms in an employee handbook are binding only when either the handbook itself or the employer's representation of it clearly indicate that the handbook is to have a binding effect." Imdorf v. Pub. Sch. Emps. Ret. Sys., 638 A.2d 502, 505 (Pa. Commw. Ct. 1994) (citing Bernstein v. Commonwealth, 617 A.2d 55, 60-61 (Pa. Commw. Ct. 1992); see also DeFrank v. Greene Cnty., 412 A.2d 663, 665-66 (Pa. Commw. Ct. 1981) (applying equitable estoppel in finding that employer was contractually bound to

provide pre-termination hearings based on representation that policy was binding, and holding that failure to do so deprived the plaintiff of due process interest in job).

In this case, Beckwith argues that she had a protectable interest in her continued employment with Penn State.  Beckwith first contends that she had a protectable interest in her employment, and in having her employment governed by the provision of HR23, which the University's general counsel has previously opined obligates Penn State to conduct promotion and tenure review in "strict accordance" with the provisions of HR23.  (Pl. SMF ¶¶ 145-47.)  To the extent that HR23 is insufficient of its own accord to create such interests as a general matter, Beckwith argues that Penn State should be estopped from claiming otherwise because of this position taken by the University's general counsel in a memorandum stating that "[t]he University is legally obligated under the Due Process Clause of the Fourteenth Amendment to the United States Constitution to conduct promotion and tenure review in strict accordance with the provisions of HR-23."  (Pl. SMF ¶¶ 145-147.) The memorandum further stated that a legal challenge to a negative promotion and tenure decision could be based on procedural error, and warned that an aggrieved candidate could allege that the HR23 procedures were not followed, and, therefore, were breached.  (Id. ¶ 148.)

At least one court has previously considered whether the procedures set forth in Penn State policy HR23, which govern Penn State's promotion and tenure procedures and regulations, create a protectable property interest in continued employment, and has answered that question in the negative. See Gronowicz v. Pennsylvania State University, 1997 WL 799438 (E.D. Pa. 1997). In Gronowicz, a tenure-track professor filed suit alleging that Penn State deprived him of procedural due process when it terminated him after a negative fourth-year review based on his lack of research and failure to publish. Id. at *1-3. The court specifically considered the language of HR23, which provides that "tenure and promotion imply selectivity and choice" and required qualitative judgment with respect to tenure and promotion decisions, and thus concluded that HR23 did not limit Penn State officials in exercising discretion in determining tenure eligibility, and found that HR23 did not create a protectable property interest. Id. (citing Ziegler v. Pennsylvania State University, No.4:94-CV-311 (M.D. Pa. Nov. 21, 1994) (holding that what was then referred to as PS-23 did not create a protectable liberty or property interest)). For this reason, the court rejected the plaintiff's claim of a subjective expectation that he would receive tenure, and found that such expectation was insufficient to establish a protected property interest protected by the Due Process Clause. Id. at *5. Notably, however, the court in Gronowicz does not appear to have been presented with a

16

situation in which the University's general counsel has expressly advised the faculty that HR23 imposed mandatory procedures that must be followed when making employment decisions with respect to non-tenured faculty, such as Beckwith.  For this reason alone, and because the analysis of Gronowicz was confined to the facts of that case, we are not persuaded that the unpublished decision reached in that case has the preclusive effect that Penn State urges.

Beckwith invokes the doctrine of quasi estoppel, asserting that Penn State should be estopped from asserting that HR23 does not confer upon non-tenured faculty a protectable interest in their continued employment by virtue of the general counsel's articulated interpretation of that policy.   In essence, quasi estoppel precludes a party from asserting, to another's disadvantage, a position inconsistent with a position previously taken by that party.  See Hesling v. Avon Grove Sch. Dist., 428 F. Supp. 2d 262, 269 (E.D. Pa. 2006); see also Erie Telecommunications Inc. v. City of Erie, 659 F. Supp. 580 (W.D. Pa. 1987).  The doctrine may be applicable in situations where it would be "unconscionable to allow a person 'to maintain a position inconsistent with one to which he acquiesced, or from which he accepted a benefit.' It is '[a]n equitable doctrine preventing one from repudiating an act or assertion if it would harm another who reasonably relied on the act or assertion."

<u>Albertson v. Winner Automotive</u>, No. Civ. A. 01-116KAJ, 2004 WL 2435290, at*4 (D. Del. Oct. 27, 2004).

In this case, we find that there are sufficient facts in the record to support the plaintiff's assertion that she was entitled to some degree of procedural due process before she could be terminated, based on the fact that Penn State's general counsel has affirmatively interpreted HR23 to mandate specific procedures that must be followed in the course of making promotion and tenure decisions for faculty members, and because the University appears to have acknowledged that promotion and tenure review is governed by the procedures prescribed by its own policies.  The defendant's reliance upon a single unpublished decision, which appears to have been based on a different set of facts, for the broad proposition that non-tenured faculty are entitled to no procedural protections in the course of their tenure reviews is not clear from the record in this case, and seems contradicted by the way in which Penn State conducts faculty promotion and tenure reviews as a matter of course.

However, even if Beckwith was entitled to have her promotion and tenure review conducted in accordance with the procedures prescribed in HR23, the uncontroverted evidence does not support her central claim that Penn State violated those procedures, or otherwise denied her due process in the course of her employment review.  Indeed, that evidence indicates not only that Penn State

conducted Beckwith's second-year promotion and tenure review in accordance with University procedures, but also that Beckwith successfully availed herself of the protections offered by HR23 by persuading the Faculty Senate Committee that there had been a specific instance of procedural unfairness with respect to the review of her dossier, and in having the promotion and tenure review reconsidered after her dossier was revised in accordance with the Faculty Senate Committee's findings.  Although Beckwith was dissatisfied with the ultimate outcome following this second review, and although she endeavors to present a picture of procedural unfairness, we do not agree with her that there are sufficient disputed issues of fact to create a triable issue with respect to whether Beckwith received adequate procedural due process before her employment was terminated.

Indeed, we agree with Penn State that the undisputed facts show that Penn State faithfully complied with the procedures prescribed by HR23.  After Beckwith was initially notified that her faculty appointment with the University was being terminated following an unfavorable second-year review based upon her lack of progress in her research and publishing, she petitioned the Faculty Senate Committee to review that decision.  As part of her petition, Beckwith lodged a number of objections regarding the way in which her review was conducted, and the factors that were considered.  Following review of the petition, the Faculty Senate Committee

ultimately found a single instance of procedural unfairness during Beckwith's review. The Faculty Senate Committee reviewed the College of Medicine's promotion and tenure policy, the HR40 review policy, Beckwith's first-year HR40 review, the second-year promotion and tenure dossier, and all letters of review for that second-year review. (Pl. SMF ¶ 161.) During the review, the Committee reviewed the reasons set forth by Drs. Wilson and Paz, and the College Committee for their negative review of Beckwith's research progress, and found that there was sufficient contradiction between the factual basis for those negative evaluations and the expectations that were communicated to Beckwith to warrant a finding of procedural unfairness during her second-year review. In order to remedy that single instance of procedural unfairness, the Faculty Senate Committee recommended that the "section of the dossier specifically set aside for the description of unit specific expectations for promotion and tenure be revised to include statements of the specific expectations within the allocated effort for research consistent with those expectations communicated to [Beckwith] through her letter of offer and the HR40 review letter. This revised dossier should then be reconsidered at all levels of review." (Def. SMF ¶ 33.) Although Beckwith attempts to show that there is some dispute regarding the Faculty Senate Committee's recommendation in this regard, we find no dispute that

ultimately, this is the only recommendation that the Faculty Senate Committee made in response to Beckwith's petition.[2]  (Id. ¶ 34.)

The record is also clear that Penn State revised Beckwith's dossier in accordance with the Facutly Senate Committee's single recommendation.  Following a subsequent review that included consideration of Beckwith's revised dossier and the information that the Faculty Senate Committee found was insufficiently considered during the initial review, it was once again decided that Beckwith's employment would be terminated.

---

[2]  In particular, Beckwith takes issue with the fact that the Faculty Senate Committee initially recommended that Beckwith's dossier be revised to include copies of her offer letter and the HR40 review, but later changed this recommendation after the Provost's office objected that inclusion of these specific documents was irregular or not permitted by Penn State policy.  Although there appears to have been some disagreement about whether inclusion of these specific documents would violate Penn State policy, we find not support for the plaintiff's suggestion that the failure to include the documents themselves in Beckwith's dossier amounted to a due process violation, particularly given that the substance of the Committee's recommendation – namely, that Beckwith's dossier be revised to include "statements of the specific expectations within the allocated effort for research consistent with those expectations communicated to [Beckwith] through her letter of offer and the HR-40 review letter" – was followed.  The fact is that the Faculty Senate Committee ultimately made a single recommendation in response to Beckwith's petition and in order to correct what it perceived as procedural unfairness, and this recommendation was followed.  We do not find that revisions to the Faculty Senate Committee's initial recommendations amount to triable issues of fact regarding whether Beckwith was provided adequate due process, and the plaintiff provides no substantial support for this assertion.

After this point, Beckwith continued to avail herself of University procedures in order to lodge additional challenges to her review and the University's decision. Thus, Beckwith filed a second petition alleging that "Dr. Wilson entered false and deceitful information into [her] dossier . . . which resulted in termination of [Beckwith's] tenure track faculty appointment." (Def. SMF ¶ 46.) The Faculty Senate Committee considered this petition, but ultimately "found no evidence of violations of professional ethics and no reason to believe that further investigation would reveal otherwise." (Id. ¶ 47.) Beckwith then filed a third petition with the Committee claiming that she had new documents that would demonstrate that "false statements" were entered into her dossier. (Id. ¶ 48.) Upon receipt of this third petition, the Faculty Senate Committee declined to review it because it was found to have made the "same claims" as those alleged in the second petition. (Id. ¶ 49.)

We agree with Penn State that not only has the plaintiff failed to support her claim that she was denied procedural due process, but find that the record affirmatively demonstrates that the Beckwith was provided procedural due process, and took advantage of the process that was made available to her in order to challenge the University's adverse employment decision. Although Beckwith plainly disagrees with the ultimate outcome of that process, we do not find that there is any dispute that Penn State followed HR23 with respect to Beckwith's second-year promotion and

tenure review, and that Beckwith availed herself of the procedural due process that was open to her in order to lodge objections to the adverse decision that was reached with respect to her non-reappointment to the faculty.  Accordingly, we do not find that Beckwith has presented sufficient evidence to overcome Penn State's assertion that Beckwith was afforded adequate due process in this case.

### B.   Beckwith's Due Process Claim Based Upon Her Alleged Liberty Interest in her Reputation Fails

In the complaint, Beckwith also alleged that Penn State violated her right to due process by intentionally and maliciously depriving her of her liberty interest in her professional reputation, by distorting and misrepresenting Beckwith's research progress and work ethic.  Beckwith claims that the manner in which Penn State terminated her employment was done in "an attempt to create the appearance that plaintiff was a sub-standard employee," and she claims that as a result she now has "a substandard employment record that severely diminishes her reputation and standing in the academic community, and significantly impairs her ability to find comparable employment in another university." (Doc. 1, ¶¶ 98-99.)  Although Penn State moved for summary judgment on this claim, the plaintiff has not responded in any substantive fashion to this aspect of the summary judgment motion. In the absence of any effort by Beckwith to support this claim, upon consideration we find

that Penn State is entitled to summary judgment on this claim because it is unsupported by the record.

"By now it is clear that 'reputation alone is not an interest protected by the Due Process Clause.'"  Dee v. Borough of Dunmore, 549 F.3d 225, 233 (3d Cir. 2008) (quoting Clark v. Twp. of Falls, 890 F.2d 611, 619 (3d Cir. 1993)).  Instead, "to make out a due process claim for deprivation of a liberty interest in reputation, a plaintiff must show a stigma to [her] reputation plus deprivation of some additional right or interest."  Hill v. Borough of Kutztown, 455 F.3d 225, 236 (3d Cir. 2006); see also Clark, 890 F.2d at 619 ("[D]efamation is actionable under 42 U.S.C. § 1983 only if it occurs in the course of or is accompanied by a change or extinguishment of a right or status guaranteed by state law or the Constitution."); Sturm v. Clark, 835 F.2d 1009, 1012 (3d Cir. 1987) ("[M]ere damage to reputation, apart from the impairment of some additional interest previously recognized under state law, is not cognizable under the due process clause.").  This is commonly referred to as the "stigma-plus" test.  Dee, 549 F.3d at 234 (citing Hill, 455 F.3d at 236).  An employee may be deprived of a liberty interest when an employer creates and disseminates a false and defamatory impression about an employee in connection with a termination.  Hill, 455 F.3d at 236.  However, any such statement must be both false and made publicly.  Id.

As Penn State notes, the mere proof that one's record of non-retention in her job makes her a less attractive candidate to other employers does not amount to a deprivation of a liberty interest protected by the Due Process Clause.  See Keddie v. Pa. State Univ., 412 F. Supp. 1264, 1274 (M.D. Pa. 1976).  Moreover, "denial of tenure because of poor or, . . . non-excellent professional performance, is not a badge of infamy."  Id. at 1273-74; see also Chinoy v. Pa. State Univ., 2012 WL 727965, at *5 (M.D. Pa. 2012) (statements regarding professional competence are not sufficient to prove a deprivation of liberty protected by the Due Process Clause).

Because the plaintiff has declined to respond substantively to Penn State's arguments that this claim fails for lack of evidentiary support, we are left with the plaintiff's allegations that due to her termination she has a "substandard employment record" that has impaired her ability to find employment with another university. (Compl. ¶¶ 99-100.) Notably, Beckwith has not produced sufficient evidence to show that Penn State publicly created a false and defamatory impression about her. Furthermore, it is undisputed that in 2013, Beckwith found employment with the Department of Defense with an annual salary higher than she earned while at Penn State.  Given the absence of evidence offered to support her stigma-plus claim that Penn State deprived her of a liberty interest in her reputation, and given that Beckwith has successfully obtained new employment since leaving Penn State, we are

constrained to find that there is insufficient evidence in the record to support this particular claim.

**C.    Beckwith's Breach of Contract Claim Fails Because There is Insufficient Evidence to Support her Claim that She had a Six-Year Employment Contract, and Because Even if a Contract Did Exist There is No Evidence of Breach**

Finally, Beckwith claims that the terms of the offer letter that she negotiated with Dr. Wilson, and which she signed prior to beginning her employment with Penn State, prove that she had a six-year employment contract with the University. Beckwith also claims that Penn State breached that contract when it terminated her employment following her second-year promotion and tenure review.  We disagree.

In Pennsylvania, there is a strong presumption that employees are employed at-will.  Bair v. Purcell, 500 F. Supp. 2d 468, 479 (M.D. Pa. 2007) (citing Murray v. Commercial Union Ins. Co., 782 F.2d 432, 435 (3d Cir. 1986)).  Under the at-will employment doctrine, an employer can terminate the employment relationship at any time and for any reason.  Id.  However, the presumption of at-will employment can be overcome by showing that there was an express contract between the parties, with a provision stating that an employee can only be terminated "for cause."  Id. (quoting Scott v. Extracorporeal, Inc., 545 A.2d 334, 336-37 (Pa. Super. Ct. 1988)).  Pennsylvania courts have recognized that an employment agreement for a definite

26

duration is sufficient to rebut the presumption of at-will employment.  See Rapagnani v. Judas Co., 736 A.2d 666, 669 (Pa. Super. Ct. 1999).

The party claiming the existence of an employment contract for a specific duration has the burden of presenting clear evidence of such contract.  See Greene v. Oliver Realty, Inc., 526 A.2d 1192, 1196 (Pa. Super. Ct. 1987); see also Geary v. United States Steel Corp., 319 A.2d 174, 176 (Pa. 1974) (party claiming an agreement for a definite period has the burden of proving that fact).  The Third Circuit Court of Appeals has observed that the clear proof burden is "very great" and is not "easily overcome."  Schoch v. First Fidelity Bancorp., 912 F.2d 654, 660 (3d Cir. 1990) (quoting DiBonaventura v. Consolidated Rail Corp., 539 A.2d 865, 867 (Pa. Super. Ct. 1988)).  When a party proves that a contract specified a definite period of employment, the employee may not be terminated during that time unless the employer has "just cause."  Darlington v. General Electric, 504 A.2d 306, 309 (Pa. Super. Ct. 1986).

Thus, in order to make out a claim for breach of contract, and to overcome the presumption that her non-tenured employment was at-will, Beckwith must come forward with evidence to show that (1) she had a contract with Penn State for a definite term, (2) Penn State breached a duty imposed by that contract, and (3) Beckwith sustained damages as a result. Sullivan v. Chartwell Inv. Partners, Inc., 873

A.2d 710, 716 (Pa. Super. Ct. 2005) (citing <u>J.F. Walker Co., Inc. v. Excalibur Oil Group, Inc.</u>, 792 A.2d 1269 (Pa. Super. Ct. 2002)).

The plaintiff argues either that the offer letter that she signed was unambiguously a "definite-term six-year contract of employment," (Doc. 33, at 9.), or that the existence of any ambiguities in the "contractual terms leaves an issue of fact for the jury as a matter of law, foreclosing summary judgment," (<u>Id.</u> at 10.). Following our review of the offer letter, we disagree on both counts.

It is undisputed that at the time of her hire, Beckwith was untenured, and was being hired on what was anticipated to be a six-year tenure-track process. It is also true that the letter provides that Beckwith would receive reviews after her second and fourth year of employment, and notes that early tenure was a possibility. Relying on this language in the letter, Beckwith claims "there is no ambiguity" that she and Penn State entered into a six-year employment agreement. (<u>Id.</u> at 9.) Beckwith attempts to bolster this interpretation of isolated language in the offer letter by noting that the offer letter also provided that she was to receive substantial funds to build a research laboratory, as well as other research support exhibiting a genuine commitment to her as a faculty member, and that the parties contemplated that these support funds would be provided for multiple years. (<u>Id.</u> at 9-10.)

In her interpretation of the letter, however, Beckwith studiously ignores or discounts that the letter expressly states that Beckwith's employment would be "subject to the policies of the [University] and the College of Medicine . . . ." (Doc. 32, Ex. H, Bates No. D00140.)  Importantly, those very policies provide for non-reappointment during the provisional period of employment – in other words, during the period before a professor is awarded tenure.  (Id., Ex. M, at D00080, § IV.8 ("Notice of Non-Reappointment and Termination") (providing that "faculty members who will not be continued in tenure-eligible positions shall be notified in writing"); (see also Doc. 36, Ex. C, at D00022 (stating that "if the dean is considering termination of a faculty member after any provisional reviews . . .").)  The University's procedures, which were incorporated into the offer letter itself, substantially undercut Beckwith's assertion that she was contractually entitled to six years of employment with Penn State.

However, assuming that there was adequate evidence to support Beckwith's contention that she had a six-year employment contract, her claim that this contract was breached is predicated on the assertion that Penn State terminated her employment without adhering to its own policies – namely, HR23 – something we have already concluded is not supported in the record.  To the contrary, the record is unambiguous that Beckwith's second-year review was conducted in accordance with

Penn State policies, and that Beckwith was afforded the procedural protections contained within those policies.  Thus, Beckwith was able to petition the Faculty Senate Committee to challenge alleged procedural unfairness in her review, and the Committee recommended that her second-year review be conducted again after her dossier was revised to correct the single instance of procedural unfairness that the Committee found in Beckwith's case.

Beckwith also unsuccessfully filed two additional petitions, which were considered and rejected by the Faculty Senate Committee.  Although Beckwith's appeals ultimately were not successful, the evidence nonetheless shows that Penn State adhered to its written procedures in the review and reconsideration of Beckwith's second-year evaluation.  We disagree with Beckwith that the record contains sufficient disputed facts with respect to this matter, and do not find sufficient evidence that the University breached the alleged employment contract by failing to follow its own policies.  Instead, the record shows that Beckwith was an untenured faculty member who was terminated following a second-year review that was conducted in accordance with Penn State written policies, and that Beckwith was afforded the protections available under those policies.  Penn State is thus entitled to summary judgment on this claim.

## V.   RECOMMENDATION

Accordingly, for the foregoing reasons, IT IS HEREBY RECOMMENDED

THAT Penn State's motion for summary judgment (Doc. 28.) be GRANTED and the

case be closed.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings,
recommendations or report addressing a motion or matter described in
28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
disposition of a prisoner case or a habeas corpus petition within fourteen
(14) days after being served with a copy thereof.  Such party shall file
with the clerk of court, and serve on the magistrate judge and all parties,
written objections which shall specifically identify the portions of the
proposed findings, recommendations or report to which objection is
made and the basis for such objections.  The briefing requirements set
forth in Local Rule 72.2 shall apply.  A judge shall make a de novo
determination of those portions of the report or specified proposed
findings or recommendations to which objection is made and may
accept, reject, or modify, in whole or in part, the findings or
recommendations made by the magistrate judge.  The judge, however,
need conduct a new hearing only in his or her discretion or where
required by law, and may consider the record developed before the
magistrate judge, making his or her own determination on the basis of
that record.  The judge may also receive further evidence, recall
witnesses or recommit the matter to the magistrate judge with
instructions.

Submitted this 19th day of August, 2014.


*/s/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

31